U.S. Department of Justice



*United States Attorney*
*Eastern District of New York*

WYC:RMT
F.#2008R00728

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 9, 2010

**By ECF and Hand Delivery**

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Christopher Sakowski
Criminal Docket No. 08-345 (BMC)

Dear Judge Cogan:

The government respectfully submits this letter in advance of sentencing in the above-captioned case, which is scheduled for September 15, 2010 at 3:30 p.m. For the reasons set forth below, the government respectfully asks the Court to sentence the defendant within the Guidelines range of 121 to 151 months.

I. Background

A. The Offense

In 2006, law enforcement officials launched an investigation into a criminal organization operating a commercial child pornography website known as “Home Collection.” In the course of a few months, this undercover investigation, called Project FLICKER, identified approximately 18 members-only websites that offered access to child pornography. Investigators also identified numerous PayPal and other online payment accounts that were used to facilitate purchases on these websites. By reviewing records from those payment website accounts, investigators were able to identify numerous individuals who had paid to subscribe to the websites offering child pornography.

The defendant was among those individuals identified through the Project FLICKER investigation. According to records gathered by Project FLICKER investigators, an individual using the email addresses “mangel674@yahoo.com” and “dsawkowski04@sprintpcs.com” subscribed to the following members-

only websites, which are known to have provided child pornography: (1) "Home Collection/Desired Angels" on or about November 30, 2006, (2) "LS Pics" on or about December 2, 2006; (3) "Dark Robbery" on or about December 15, 2006; (4) "Home Collection/Pure Child Fuck" on or about January 19, 2007; (5) "Young Strawberries" on or about January 26, 2007; (6) "Lolita's Avenue" on or about January 28, 2007; (7) "Latvian Voodoo" on or about January 29, 2007; and (8) "Pedo Stars" on or about February 1, 2007. Records from Yahoo! and Sprint led investigators to the defendant, and records from the defendant's PayPal and Commerce Bank accounts confirmed that he was the individual subscribing to the targeted websites. During the period between November 30, 2006 and February 1, 2007, the defendant's bank records reflect that he spent more than $600 on those members-only websites.

On March 11, 2008, ICE agents traveled to the defendant's residence to interview him. The defendant's mother, with whom the defendant lives, informed the agents that the defendant would not be home that evening. The agents left their contact information and asked the defendant's mother to have the defendant call them. That evening, the defendant called one of the agents and made arrangements to meet with her the following morning.

On March 12, 2008, ICE agents approached the defendant while he was outside his residence, and the defendant voluntarily agreed to answer the agents' questions. During the interview that followed, the defendant stated that he had purchased his computer new in April 2007, that his computer was password-protected, and that he was the only person who used his computer. He also confirmed that he used the "mangel674@yahoo.com" and "dsawkowski04@sprintpcs.com" email addresses.

The defendant then retrieved his computer and signed a consent form stating that he authorized the agents "to conduct a complete search" of his computer for images depicting child pornography. One of the ICE agents then performed a preliminary examination of the defendant's computer in the defendant's presence, and after only a few minutes discovered numerous images depicting child pornography. Upon seeing this discovery, the defendant became visibly upset and anxious, stating, "I don't know how you found that." The defendant subsequently admitted to agents that he visited the child pornography website "club17.com" and that he recalled subscribing to "www.lustgallery.com" and "Lolita something." He also stated that he has downloaded videos from the "lust gallery" and "club17.com" websites. The defendant then agreed to allow the agents to take his computer back with them for further forensic examination.

Subsequent forensic analysis of the defendant's computer by ICE investigators revealed hundreds of still image and at least nine video files depicting child pornography. That analysis also revealed that the night before agents met with the defendant on March 12, 2008, and not long after he spoke with the ICE agent by telephone to arrange that meeting, the defendant attempted to delete numerous files containing images of child pornography from his computer. Finally, forensic analysis established that the defendant downloaded and received via the internet numerous files containing images and videos depicting child pornography.

On April 23, 2008, the defendant surrendered to ICE agents and was placed under arrest. Agents then provided the defendant with a written Miranda form. While being fingerprinted, and despite warnings from the agents that he should not speak because he had retained counsel, the defendant confessed that he had downloaded child pornography images from bulletin boards on the internet. Later that day, while being transported to court, the defendant told the agents that he thought he had deleted the images of child pornography from his computer and that he would never touch a child because he was scared that he would get caught.

On May 22, 2008, a grand jury in the Eastern District of New York returned a nine-count indictment charging the defendant with eight counts of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(A).

On December 22, 2008, the defendant pleaded guilty to Count I. On November 3, 2009, the Court granted the defendant's motion to withdraw his guilty plea. On January 29, 2010, a grand jury in the Eastern District of New York returned the operative superseding indictment charging the defendant with six counts of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(A).

On March 31, 2010, the defendant filed a motion to suppress, inter alia, all his statements to agents. As a result, trial in this case, which had been set for April 12, 2010, was adjourned until April 26, 2010 and a suppression hearing was set for April 12, 2010. On April 12, 2010, the defendant informed the Court and the government that he would be withdrawing his suppression motion and wished to plead guilty once again. He then pleaded guilty to Count I of the superseding indictment,

charging receipt of child pornography contrary to 18 U.S.C. § 2252(a)(2).

B. Victims

As noted in the Presentence Investigation Report ("PSR") initially prepared March 17, 2009 and revised August 12, 2010, the child pornography found on the defendant's computer included large numbers of images portraying known victims whose cases have been investigated by law enforcement agencies in the United States and in Europe. (See PSR ¶ 14).

Among the known victims depicted in images on the defendant's computer were those that were part of what is known by child pornography investigators as the "Tara" series. Had this case gone to trial, the government likely would have called an FBI agent to testify to the following with regard to the "Tara" series.

Images in that series had been released on an ongoing basis during the course of several years beginning in approximately 2004. The individual photographing and filming the images (the "subject") was careful to conceal his identity by pixilating the images of his face or by wearing a clown mask. He would also mask the victim's face by placing a black bar across her eyes or by using a Mardi Gras mask. The images in the series typically showed the victim nude or masturbating, engaging in oral sex, being digitally penetrated in her vagina or anus, being penetrated vaginally or anally with a sexual object, or being penetrated vaginally or anally penetrated by a penis. In some of the images/videos, the victim was compliant and smiling, while in others, she could be heard to be in pain. Over the course of time, the still images had become increasingly violent, with later images showing the subject wielding a large knife toward the victim. The knife is shown as being pressed against the victim's genitals as well as the victim's face and neck. The victim's composure in the images appeared progressively more distressed as well.

Based on clues from the images and videos in the "Tara" series, investigators came to believe that the victim was somewhere in the Southeast United States. An intensive law enforcement search led to the arrest of an individual named James Bartholomew Huskey living in Lafayette, Georgia in June 2008 and ultimately to the rescue of his 9-year-old daughter.

During subsequent interviews, Huskey told investigators that he began taking nude pictures of his daughter when she was 5

years old and started to touch her in a sexual manner when she turned 6 years old. Huskey progressed to oral sex when she was 7 years old. Huskey started to engage in anal sex with the victim when she was 8 years old. Huskey attempted to have vaginal sex with her in early 2007 but could not get his penis in her. Huskey would penetrate her vagina with objects shortly thereafter to make her bigger. Huskey likened himself to a porn director and, when he was describing his daughter's performance on the videos, said with pride that she "could do what the big girls [adult porn stars] did." Huskey stated that he started taking sexual pictures of his daughter for the purpose of trading for higher quality and more exclusive child pornography from others, typically via the internet.

Following Huskey's guilty plea, on March 5, 2009 the Hon. Robert L. Vining, Jr., U.S. District Judge in the Northern District of Georgia, sentenced Huskey to a total of 840 months' incarceration.

## II. Argument

The PSR estimates the defendant's Total Offense Level under the Sentencing Guidelines to be 32, resulting in a sentencing range of 121 to 151 months. As set forth below, the government concurs with the Probation Department and submits that a Guidelines sentence should be imposed in this case.

### A. Child Pornography Is A Form Of Child Abuse Necessitating Severe Punishments

Child pornography is one of the most insidious traps confronting children in this country. Both Congress and the Supreme Court have found that the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance because of the psychological and physical effects such abuse has on children and their families. Congress understood that the children used in the production of child pornography were the "primary victims" when it passed legislation prohibiting the sexual abuse and exploitation of children through pornographic means. See United States v. Boos, 127 F.3d 1207, 1210 (9th Cir. 1997). Congress' legislative history for 18 U.S.C. 2252 states that the statute "was born our of a 'deep and abiding concern for the health and welfare of the children and youth of the United States,' and was enacted in order 'to protect and benefit such children.'" Id. at 1211 (citing S. Rep. No. 95-138 at 40 (1977), reprinted in 1978 U.S.C.C.A.N. 40, 43).

A consumer of child pornography, like the defendant in this case, causes children of pornographic abuse to suffer in various ways: (1) the abuse is perpetuated through dissemination, (2) the existence of the image is an invasion of the child's privacy, and (3) the demand for the creation of more images is created by the consumer. See United States v. Norris, 159 F.3d 926, 929-30 (5th Cir. 1998). "Child pornography invariably produces great shame and guilt in the children involved, especially as they get older and more fully comprehend the enormity of their abuse and know that there is a permanent record of the degradation out there, circulating around for people to see –- maybe future friends or their own children when they grow up." Dr. Victor B. Cline, Pornography's Effects on Adults & Children, Morality in Media, 12 (2001).

B. Victim Impact In This Case

Prior to withdrawing his first guilty plea, the defendant presented evidence about his character and characteristics and several individuals wrote letters to the Court on his behalf. While no doubt the incarceration of the defendant will dramatically impact him, this impact is minor when contrasted with the massive harm to both society and, more importantly, the victims least able to protect themselves: the children depicted in the pornographic images consumed by the defendant.

The very real nature of the harm was described by one child pornography victim, Masha Allen, to a Congressional subcommittee. 2006 WL 1218846 (F.D.C.H. May 3, 2006). She explained:

> I was really mad that Matthew [Mancuso, who sexually abused her over a five-year period] didn't get harder sentences and that he went to an easy prison. But I got more upset when I found out about the pictures of me that he put on the Internet. I had no idea he had done that. When I found out about it I asked our lawyer to get them back. He told me we couldn't do that. Then I found out that they would be there forever.
>
> . . .
>
> Usually, when a kid is hurt and the abuser goes to prison, the abuse is over. But

> because Matthew put my pictures on the Internet, the abuse is still going on.
>
> . . .
>
> There are a lot of cases of people who downloaded my pictures, and I want every single one of them to be punished as much as possible.

Likewise, the sexually abused children portrayed in the images that the defendant received and possessed must go through life knowing that their images are in perpetual circulation. Indeed, in a child pornography case such as this one, the primary victims are the children depicted. United States v. Shutic, 274 F.3d 1123, 1126 (7th Cir. 2001); United States v. Sherman, 268 F.3d 539, 547-48 (7th Cir. 2001). As the Sherman court noted, “child pornography directly victimizes the children portrayed by violating their right to privacy.” Id. As the court noted in Shutic, “children . . . suffer profound emotional repercussions from a fear of exposure, and the tension of keeping the abuse a secret . . . . concern for the welfare of the children who are used to create pornography is part of the public concern over child pornography.” Shutic, at 1126. (citations omitted).

Although the defendant here was not involved in any production of child pornography, his crime not only promoted the production of such materials, but also continued the harm to the children. Case law has recognized that even a “‘passive’ consumer who merely receives or possesses the images directly contributes to this continuing victimization.” Sherman, 268 F.2d at 545 (citations omitted). “Indeed, one of the reasons for criminalizing the ‘mere’ possession of child pornography is to create an incentive for the possessor to destroy the material, and alleviate some of these harms to the children depicted.” Sherman, 268 F.3d at 547.

Here, the defendant sought out, received and possessed child pornography images of numerous separate known child victim series -- that is, images and videos of real children.

C. Section 3553(a) Factors

The government submits that the Sentencing Guideline range in this case, 121 to 151 months, is reasonable and appropriate in light of the factors set forth in 18 U.S.C. § 3553(a). Morever, a lesser sentence would be inconsistent with both Congress’ and the Sentencing Guidelines Commission’s

judgments that child pornography offenses should be treated severely.

As set forth above and in greater detail in the PSR, the seriousness of the underlying offense clearly weighs in favor of a Guidelines custodial sentence for the purposes of punishment and promoting deterrence. See 18 U.S.C. § 3553(a)(1). The evidence shows that the defendant was a consumer of child pornography for at least two years prior to his arrest. Through his receipt and possession of more than 545 still images and at least nine video clips depicting graphic child pornography -- often involving incredibly young victims -- the defendant actively engaged in conduct furthering the spread of these horrific images of the worst moments of these children's lives. As a such, the government submits that a Guidelines sentence is appropriate.

III. Conclusion

For the reasons set forth above, the government respectfully asks the Court to sentence the defendant to a term of imprisonment within the Guidelines range of 121 to 151 months.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By: /s/
Richard M. Tucker
Assistant United States Attorney
(718) 254-6204

cc: Mario Gallucci, Esq. (via ECF and Email)